273 So.2d 207

**STATE of Alabama**

v.

**HUNT OIL COMPANY, a Corporation.**

**Civ. 3.**

Court of Civil Appeals of Alabama.

Nov. 29, 1972.

Rehearing Denied Jan. 3, 1973.

446

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., and Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for the State of Alabama.

Capell, Howard, Knabe & Cobbs, P. A., Montgomery, for appellee.

WRIGHT, Presiding Judge.

A sales tax assessment was made by the Department of Revenue of the State of Alabama against Hunt Oil Company for the period of December 1, 1963 to November 30, 1966 in the amount of $2,335.55. The assessed tax was upon fuel oil sold to purchasers for heating asphaltic concrete in portable kilns at particular paving job sites.

Hunt appealed from the assessment to the Circuit Court of Montgomery County. The case was submitted to the circuit court on bill of complaint as amended, answer and stipulation of the parties. Decree was entered against the State on April 18, 1972. The State brings this appeal from the decree of the Circuit Court.

The decree of the Circuit Court covers 13 pages of the transcript and includes extensive finding of fact and the opinion of the court as to the law applicable to its judgment. The court in its decree stated that the facts involved required determination of two issues. The first issue was the application and interpretation of Section 786(34)(*l*) of Title 51 of the Code. The second issue was whether the interpretation of Section 786(34)(*l*) as exemplified by Department of Revenue Regulation F21–012, and applied to appellant here is so unreasonable and discriminatory as to

violate the Equal Protection Clause of the Federal Constitution. As a corollary, the court further stated the issue that if the Department of Revenue had properly interpreted Section 786(34)(*l*) of Title 51, then was the statute itself, when applied in the instant case, so arbitrary and discriminatory as to violate the Equal Protection Clause of the Federal Constitution.

In its conclusion the trial court found each issue in favor of the taxpayer and against the State, but primarily set aside the assessment because the regulation of the department applying Section 786(34)(*l*) to the taxpayer in this case was discriminatory and violated the Federal Constitution.

We know of no way to succinctly and briefly write to the issues presented by this case, though we will make every effort to do so.

Section 786(34)(*l*) of Title 51 appears in the Code as follows:

"There are exempted from the provisions of this article and from the computation of the amount of the tax levied, assessed or payable under this article the following:

.    .    .    .    .    .

"(1) The gross proceeds of the sale or sales of fuel oil purchased as fuel for kiln use in manufacturing establishments."

Department of Revenue Regulation F21–012 was first adopted in 1954 in relation to Title 51, Section 755(10) which contained the same exemption as is presently codified as 786(34)(*l*). As first promulgated F21–012 was in pertinent part as follows:

"Manufacturers may purchase tax free fuel oil for use in firing kilns. The word 'kiln' is understood to mean any large structure or machine used in processing materials or articles in the course of manufacture by the application of a high degree of heat, such as; manufac-

turing brick, cement and lime; in drying lumber; or in drying ingredients for use in manufacturing bituminous road surfacing materials."

In 1960, after passage of Section 786(34)(*l*), Regulation F21–012 as pertinent was changed to read as follows:

"Manufacturer's purchase of fuel oil for use in firing kilns are exempted from tax. The work 'kiln' as used herein means the structures and appliances customarily identified by this work, such as brick kiln, lime kiln, dry kiln (for lumber) and cement kiln."

In 1964, F21–012 was again amended to read substantially as the original of 1954.

The State made its assessment against Hunt Oil for sales tax upon sales of fuel oil to parties who used such fuel oil to heat asphaltic concrete in portable kilns at job sites where it was being used in highway paving contracts. It was contended by the State below that such portable kilns operated at a job site do not fall within the exemption statute, Section 786(34)(*l*) because they are not "manufacturing establishments." This contention of the State is based upon the holding of the Supreme Court of Alabama in the case of State v. Blount Brothers Corp., 277 Ala. 505, 172 So.2d 389. Hunt, on the other hand, contended that *Blount* is not conclusive of the meaning of "manufacturing establishment" as used in Section 786(34)(*l*).

The trial court was of the opinion that the term "manufacturing establishment" is broad enough in scope to include the operation of mixing and heating the ingredients of asphaltic concrete in portable kilns at the job site, though it did not base its decree upon this finding. However, this opinion of the trial court included in its decree is assigned by the State as error on this appeal. Thus, we will consider this assignment of error first.

*Blount*, supra, arose from an assessment of sales tax by the State against the tax-

payer under Title 51, Section 786(2)(m). That statute is as follows:

"The use within the state of tangible personal property by the manufacturer thereof, as building materials in the performance of a construction contract, shall, for the purposes of this article, be considered as a retail sale thereof by such manufacturer, who shall also be construed as the ultimate consumer of such materials or property, and who shall be required to report such transaction and pay the sales tax thereon, based upon the reasonable and fair market price thereof at the time and place where same are used or consumed by him or it. . . . The provisions of this subdivision shall not apply to any tangible personal property which is specifically exempted from the tax levied in this article. . . ."

*Blount Brothers* was in the business of a general contractor with a major portion of its business consisting of paving roads. The subject matter of the sales tax was the use by Blount of asphaltic concrete mixed at the job site and applied as paving.

Department of Revenue Regulation B27–081 interpreted and applied Section 786(2)(m) and provided in substance that the statute did not apply when the materials were cut and fitted on the job site for attachment as construction progressed and that concrete mixed on the job as used would not come within the provisions of the statute. Regulation B27–082 provided that road contractors using asphalt for road surfacing mixed on the job were liable for sales tax on the asphalt.

*Blount* contended it was not a manufacturer of the asphalt prepared in portable mixers at the job site or if it was a manufacturer of asphaltic concrete, Regulation B27–081, which exempted concrete mixed at the job site from the tax but not asphalt, was discriminatory and violated the Equal Protection Clause of the Federal Constitution. The State contended *Blount*

was a manufacturer within the meaning of the statute.

In its decree the trial court found from the evidence that Regulation B27–081 was a correct interpretation of Section 786(2)(m) and that asphalt plant mix prepared in portable mixers at the job site and used in paving as by *Blount* came within the exemptions of the regulation. It further found that the taxing of asphalt mixed at the job site but not taxing concrete prepared and used in a similar manner was arbitrary and discriminatory and violated the Equal Protection Clause of the Federal Constitution. The assessment against *Blount* was held void and set aside.

Upon appeal by the State to the Supreme Court, the findings of the trial court set out above were affirmed. In its decision the Supreme Court discussed the fact that Section 786(2)(m) did not use conjunctively the terms "manufactured or compounded" or "manufacturer or compounder" which had been in previous cases found to have a broad and all inclusive meaning, but used only the word manufacturer. After such observation, the court then stated— "We perceive therefore the use of only one of these words must have been intended to have a narrow and restricted meaning. It would appear that appellee is not a 'manufacturer' within the meaning of § 786(2)(m), supra."

It is argued here by the State that this statement by the court in *Blount* was a finding that one who mixed asphalt at the job site in a portable kiln as did Blount was not a "manufacturer" within the statute and thus the use of fuel oil to heat the asphalt in such portable kiln could not be using fuel oil "purchased as fuel for kiln use in manufacturing establishments" as provided in Section 786(34)(*l*). In other words, if the process is not manufacturing, the place where it occurs is not a "manufacturing establishment." Appellee Hunt contends that the quoted statement from *Blount* was not necessary to the decision affirming the decree of the trial court, but merely amounted to a suggestion.

In order to determine the full import of the decision in *Blount* we have gone to the original record of the proceedings before the Supreme Court.

We have previously herein stated the findings of the trial court in *Blount*. No where in its decree did it find that Blount was not a manufacturer within the meaning of the statute. However, it did find that Regulation B27–081 which interpreted the statute as not applying to concrete mixed on the job for attachment as construction progressed was a proper interpretation. The effect of such finding is that since by regulation the State had provided that concrete mixed at the job site in a process not materially different from that of asphalt was not manufacturing under the statute, then neither was the mixing of asphalt. The Supreme Court affirmed this finding and further stated that by the use of only the word manufacturing in the statute, the legislature did not intend to include processors or compounders.

Accepting the conclusion of *Blount* that the production of asphaltic concrete in portable mixers at the job site is not manufacturing as that term is used in Section 786(2)(m), the proposition then presented is—Is the sale of fuel oil to purchasers for use as fuel to heat asphalt kilns in portable mixers at the job site a sale of fuel for use in manufacturing establishments and exempt under Section 786(34)(*l*).

Appellee submits that since this case involves a different statute from that involved in *Blount,* supra, that the term manufacturing should not be given the narrow and restrictive definition as was given in *Blount*. It contends that though the process of mixing asphalt in portable mixers may have been determined not to be manufacturing, there is no reason why the place where it occurs and the fuel oil is used cannot be defined as a manufacturing establishment. Appellee insists that the mixing of asphalt in portable mixers, while not manufacturing, must be either compounding or processing and that the compounding or processing may occur in a manufacturing establishment.

The effect of appellee's contention is that though the legislature intended to be restrictive in Section 786(2)(m) by using the term manufacturer and not including the terms compounder or processor, it did not intend to be restrictive in the wording of Section 786(34)(*l*) by using the term manufacturing establishment and not including the words compounding or processing establishment.

■ We cannot accept appellee's contention. We hold that since *Blount* in mixing asphaltic concrete in portable kilns at the job site was not a "manufacturer", fuel oil used to heat such portable kilns is not used in a "manufacturing establishment" within the provisions of Section 786(34)(*l*), Title 51 of the Code. We see such holding to be the only reasonable and logical conclusion. It is the well established rule that statutes exempting from taxation are strictly construed against the taxpayer. Pullman Standard Car Mfg. Co. v. State, 253 Ala. 638, 46 So.2d 500; Carter Oil Co. v. Blair, 256 Ala. 650, 57 So.2d 64.

We have previously set out that the Department of Revenue Regulation F21–012 interpreting and applying Section 786(34)(*l*) was first written in 1954 to include within the exemption from sales tax, manufacturers' purchase of fuel oil for firing cement kilns and kilns for drying ingredients for use in manufacturing asphalt. In 1960, for unknown reasons, fuel for firing asphalt kilns was dropped from the regulation. It is contained in the stipulation below that this omission of exemption to fuel oil used in firing asphalt kilns was challenged in the circuit court of Walker County in the case of Vulcan Asphalt Refining Co. v. State. After contest there, a decree was entered on May 21, 1964, holding that the production or processing of asphalt plant mix was carried on and performed in manufacturing establishments within the meaning of Section 786(34)(*l*)

and that the machines in which the fuel oil is used are kilns within the meaning of that term in the statute. This decree was not appealed.

In September of 1964, Regulation F21–012 was amended to conform with the decree in the Vulcan case.

At the time of the decree in the Vulcan case there was pending in Montgomery Circuit Court an appeal by Hunt Oil Corporation from an assessment for sales tax upon sales of fuel oil to contractors in the asphalt paving business for the period from November 1, 1959 to December 31, 1962. That assessment was made under the same statute as that in the instant case.

On May 20, 1965, by agreement between *Hunt* and the State, decree was entered holding the assessment invalid because the precise questions involved had been determined adversely to the State in the Vulcan case. It will be noted that the agreed decree invalidating the assessment against Hunt on May 20, 1965 because Vulcan had decided that the fuel oil used in producing asphalt in portable mixers was used to fire a kiln in a manufacturing establishment under Section 786(34)(*l*), occurred some three months after the decision in *Blount* on February 25, 1965.

Thus we have the anomaly of the State agreeing in circuit court to invalidate an assessment of sales tax imposed for sale of fuel oil to asphalt paving contractors and used in heating asphalt mix, because it had been held in another case in a circuit court that such sale was exempt from sales tax because the fuel oil was used in firing a kiln in a manufacturing establishment, such agreement coming after a Supreme Court decision holding that the process of mixing asphalt in fuel oil fired asphalt mixers was not manufacturing.

We now find the State in this case again assessing sales tax against the same taxpayer, Hunt Oil Company, for a different tax period but under the same statute, which assessment it agreed in a prior case was held invalid. To say this matter is

confusing is a gross understatement and it is hoped that the reader will be able to follow our attempts to unravel the confusion.

Appellee contends that the State is estopped by judgment or under the law of the thing adjudged from assessing taxes for the period claimed in this case because it had confessed in the prior Hunt case in the circuit court of Montgomery County that such assessment was void and invalid.

■■ There is no question but that the basis for the assessment and the issues of fact in the case in circuit court, though for a different tax period, were precisely the same as in this case. We recognize the ancient principle of estoppel by judgment or the law of the thing adjudged. That principle is discussed in the case of Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, and many others. However, estoppel is not a part of the decree of the court below and from aught that appears played no part in its decree. It was not one of the two specific issues stated by the court in its decree. Such issue may not thus be presented for the first time on appeal. We further note that it appears to be the law in this state that estoppel against the State is not favored. Union Central Life Ins. Co. v. State, 226 Ala. 420, 147 So. 187. In the case of State v. Maddox Tractor & Equipment Co., 260 Ala. 136, 69 So.2d 426, it was said that in the assessment and collection of taxes the State is acting in its governmental capacity and cannot be estopped in the enforcement of taxes.

The State charges error in the decree of the court when it found that the regulation of the Revenue Department is arbitrary and discriminatory, amounts to an unreasonable classification for assessment of taxes and is thus in derogation of the Equal Protection Clause of the Federal Constitution. The State further charges error in the decree which held that if the regulation properly interpreted the statute, then the statute, Section 786(34)(*l*) of Title 51, as applied in this case is arbitrary,

discriminatory and violates the Equal Protection Clause of the Federal Constitution.

The trial court in its holding that the regulation or statute was arbitrary and discriminatory, compared the factual situation found by it and affirmed by the Supreme Court in *Blount,* supra, with the factual situation in this case. The State in Blount had assessed sales tax on producers of asphalt mixed at the job site upon the theory that they were manufacturers using their product in performance of a contract under the provisions of Section 786(2)(m). In the regulatory interpretation of the statute, the State had determined that producers of concrete mixed at the job site were not manufacturers and the concrete thus mixed and used in construction was not subject to sales tax. Upon the evidence produced in *Blount* the court determined that the methods of production of asphalt and concrete in portable mixers at the job site were for all purposes the same and there was no reasonable basis for taxing asphalt producers as manufacturers and not so taxing concrete producers. Thus in application the regulation was discriminatory and invalid under the Federal Constitution. The Supreme Court went a step further and stated that neither asphalt or concrete mixed on the job site was manufacturing and neither product fell within the provisions of the taxing statute. The trial court in its decree placed much emphasis on the competing aspect of the asphalt and concrete industries. The Supreme Court quoted portions of the decree on this point. It appeared that the reasoning of the trial court was that since the industries were in keen competition that any tax placed on any part of the operation of one which affected the cost of its product or operation was discriminatory unless such tax applied equally to the other. The trial court in its decree in this case presents the same reasoning. We cannot accept this principle. We know of no requirement, constitutional or otherwise, which requires that competing industries be free from or subject to the same taxes in every aspect of their operation.

As we see it, the crux of the determination of discrimination in *Blount* was the classification by Regulation B27–081 of asphalt production at the job site as manufacturing, and the exemption of concrete production at the job site from such classification when the methods of production were the same. The statute involved was a taxing statute upon manufactured products. The discrimination arose from the fact that by regulation one product was being taxed while another product produced in substantially the same manner and under substantially the same condition was not taxed.

In the instant case, assessment for sales tax was placed upon sales of fuel oil to asphalt producers at the job site because they did not come within Section 786(34)(*l*), an exemption statute. The State says the fuel oil sold by Hunt was not used in a "manufacturing establishment" within the meaning of the statute. The position of the State is fully supported by *Blount,* supra. Under *Blount* the mixing of asphalt at the job site is not manufacturing.

The sale of fuel oil to contractors for use in heating a portable concrete mixer at the job site would not come within the exemption of Section 786(34)(*l*) any more than would such sales to asphalt producers. Neither are manufacturers. The fact that the producers of concrete, because of a difference in processing, do not require fuel oil for heating their product does not make the statute discriminatory. Again we say that equality of total taxes paid by competing industries is not required. It cannot be said that an exemption from tax may not be granted upon an ingredient necessary to the production of one product or material, merely because such ingredient is not necessary to the production of a competing product or material. Such proposition would require an examination by the legislature of the total tax burden of every producer of a product to determine if his tax burden was the same as the producer of a competing prod-

uct, though the ingredients and materials used in production were different.

■ The classification established by Section 786(34)(*l*) and interpreted by Regulation F21–012 is that of "manufacturer" or manufacturing establishment. Fuel oil used for firing kilns in manufacturing establishments is exempt from sales tax. The exemption would apply equally to manufacturers of concrete or asphalt or any others using fuel oil to fire kilns in manufacturing establishments. The power of the legislature to establish classifications of occupations, businesses and privileges for tax purposes is well established. Haden v. Watson, 270 Ala. 277, 117 So.2d 694; State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843. A tax to be equal and uniform must operate alike upon all within the class. State v. Ala. Power Co., 254 Ala. 327, 48 So.2d 445. "Unavoidable inequalities which are due only to inequalities in business conditions and activities are not sufficient to render a tax statute invalid." Vol. 84, C.J.S. Taxation § 23.

■ We cannot agree with the trial court that Regulation F12–012, before amendment in 1964, amounted to discrimination in administration of the statute since it was bsed upon the classification of "manufacturer" contained in the statute. There is no evidence that "manufacturers" of concrete were determined exempt from the sales tax on fuel oil used in firing kilns and "manufacturers" of asphaltic concrete were assessed sales tax upon fuel oil used in firing kilns.

We cannot agree with the trial court that one issue presented by the stipulation is "the matter of whether a distinction between asphalt plant mix, as one category, and cement, as another category, for purposes of tax classification, is reasonable or unreasonable."

■ The issue, as we see it, is whether the purchase of fuel oil used in firing kilns in manufacturing establishments is a proper classification for exemption from sales tax. We think it is. It was stated in Al Means, Inc. v. City of Montgomery, 288 Ala. 31, 104 So.2d 816, as follows:

"It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. . . . This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation."

■ We cannot agree with the finding of fact of the trial court as to the issue of unlawful discrimination and classification. We have reviewed such finding without any presumption of correctness since the evidence was by stipulation and not taken ore tenus from witnesses before the court. Equity Rule 56, Robinette v. Tidwell, 261 Ala. 538, 75 So.2d 138; Gibson v. Bryant, 267 Ala. 97, 100 So.2d 32. Therefore, in summary, we hold that the use of fuel oil to heat portable mixers of asphaltic concrete at the job site is not exempt from sales tax under the provisions of Title 51, Section 786(34)(*l*) for such fuel oil was not purchased for use in a manufacturing establishment under the decision of *Blount Brothers*, supra. We further hold that Section 786(34)(*l*) is not discriminatory as applied in this case and does not violate the Equal Protection Clause of the Federal Constitution, but is a reasonable classification for exemption from sales tax. We further find that the application of said statute by the Department of Revenue in entering the assessment against appellee Hunt was not arbitrary nor discriminatory. For error stated herein the decree of the trial court is hereby reversed and the decree is hereby rendered in favor of appellant which should have been entered below.

Reversed and rendered.

BRADLEY and HOLMES, JJ., concur.