HOLMES, Judge.
This is an appeal of the assessment of sales tax against The Dothan Progress (Do-than) by the State of Alabama Department of Revenue (Department) under Ala. Code (1975), § 40-23-2 and the “withdrawal” provisions of Ala. Code (1975), § 40-23-Ka).
Following an evidentiary hearing before an administrative law judge, the Department entered a final assessment for sales tax against Dothan for the period September 1, 1980, to April 30, 1983. Dothan appealed to the Circuit Court of Montgomery County. The parties submitted the case to the circuit court on joint stipulation of facts, briefs, and oral argument. The circuit court entered a judgment in favor of the Department.
Dothan, through able counsel, appeals to this court. We affirm.
Dothan operates a printing business, which prints and distributes three Alabama newspapers. While a small portion of the subscribers of two of these newspapers pay for their subscriptions, the vast majority of subscribers do not pay anything. In other words, Dothan distributes most of the newspapers for free.
The papers which Dothan “gives away” to most of its readers or subscribers are printed by Dothan, using ink and newsprint withdrawn from its inventory or stock, which is purchased at wholesale. The Department claims that it is Dothan’s withdrawing and using its ink and newsprint from inventory purchased at wholesale to produce the papers which give rise to sales tax under the withdrawal or “self-consuming” provisions of Ala. Code (1975), § 40-23-l(a).
Under § 40-23-l(a)(10), a “retail sale” which gives rise to a sales tax is defined to include the taxpayer’s withdrawal and use of stock or inventory purchased at wholesale “for the personal and private use or consumption, without transfer of title, in connection with the business_” (Emphasis added.) In companion provisions, “gross proceeds of sales” and “gross receipts” for sales tax purposes are defined to include the fair market value of such stock or inventory withdrawn or used for personal and private use or consumption, “without transfer of title, in connection with the business_” Ala. Code (1975), §§ 40-23-l(a)(6) and (8). (Emphasis added.)
Dothan contends that, under the specific language contained in §§ 40-23-l(a)(6), (8), and (10), no sales tax is due on the withdrawal and use of stock or inventory previously purchased at wholesale, unless title to such stock or inventory is not transferred to a third party. Dothan argues that, since title to each newspaper produced from ink and newsprint inventory and then distributed without charge was transferred to those subscribers or readers who received the newspapers, no sales tax is due under the withdrawal provisions of the Alabama sales tax law.
Prior to July 26, 1983, at which time they were amended, §§ 40-23-l(a)(6), (8), and (10) did not contain the above-emphasized language, “without transfer of title.” Do-than thus allots a large portion of its brief to the argument that the amended versions of the withdrawal provisions should be applied retrospectively to the period covered by the instant assessment.
We find Dothan’s emphasis upon the question of the retrospective application of *513 amended §§ 40-23-l(a)(6), (8), and (10) to be misplaced. We will assume for purposes of this opinion that the 1983 amendments to § 40-23-l(a) do apply retroactively to the period for which Dothan has been assessed. Indeed, the Alabama Supreme Court adopted such an assumption in Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984). It is our opinion, however, that, under the 1983 amended versions of §§ 40-23-1(a)(6), (8), and (10), sales tax is due based upon the particular circumstances of this case.
The Disco Aluminum case, 455 So.2d 849, was the first opportunity for the Alabama Supreme Court to interpret and apply the 1983 amendments to § 40-23-1(a). Do-than relies heavily on Disco for its argument that sales tax is triggered under the withdrawal provisions of § 40-23-l(a) only where title to the withdrawn property is not transferred. We find that Disco involved a wholly different situation — a manufacturer which apparently maintained no inventory of its products, but rather, manufactured and installed its products outside Alabama to meet specific orders of its customers. Under this limited fact situation, our supreme court held that no sales tax was due.
We find the cases since the Disco decision to be more instructive and analogous to the situation now before the court. In White v. Campbell & Associates, Inc., 473 So.2d 1071 (Ala.Civ.App.1985), cert. denied, August 23, 1985, a corporation sought a refund of sales tax which it claimed it had mistakenly paid under § 40-23-1(a)(10). The corporation was in the business of rubberlining pipes and other objects for its customers. It customarily withdrew from its inventory rubberlining materials purchased at wholesale and used those materials to rubberline objects which were owned by others and which were subsequently returned to their owners.
This court held that the corporation’s withdrawal and use of its inventory in the performance of personal contracts to rub-berline others’ objects was a retail sale within the meaning of § 40-23-1(a)(10), as amended in 1983. We found that title to the rubberlining materials withdrawn from inventory and used in the rubberlining process was not transferred or sold. Rather, the corporation sold “its capability to produce and apply the rubber lining.” White, 473 So.2d at 1075.
More recently, in Morrison Food Service of Alabama, Inc. v. State of Alabama, 497 So.2d 131 (Ala.Civ.App.1985), Morrison appealed the assessment of sales tax against it under § 40-23-1(a)(10). Morrison had contracted with several institutions to provide food and supervisory personnel to operate the institutions’ food service programs. Relying upon our reasoning in the White case, we held that sales tax was due under the 1983 amended version of § 40-23-1(a)(10). We emphasized that Morrison did not sell or transfer title to its raw materials (food) withdrawn from its inventory to the institutions with whom it had contracted. Rather, Morrison sold “its ability to purchase large volumes of food at a discount and its expertise in preparing tasteful meals to large groups of peo-ple_ [The raw materials were] compounded under Morrison’s supervision into meals and then served to its customer’s patients or members.” Morrison Food Service.
We find the White and Morrison Food Service cases to be determinative of our holding in this case. See also Ex parte State of Alabama, 487 So.2d 898 (Ala. 1985), in which the Alabama Supreme Court held that a cafeteria’s withdrawing food from its inventory (purchased at wholesale) and dispensing it to its employees as partial payment of wages was exactly the type of transaction sought to be taxed by §§ 40-23-1(a)(6) and (10).
In the instant case, Dothan withdrew its raw materials — ink and newsprint — from inventory purchased at wholesale for its personal use in printing newspapers, which were then distributed for free. Applying the reasoning of the above-cited cases, we conclude that, contrary to Do-than’s contention, title to these raw materials was not transferred or sold. Rather, the raw materials withdrawn from inventory were used to fulfill Dothan’s contractual obligation to print ads in its newspapers for its advertising customers and'then to dis *514 tribute those newspapers. What Dothan sold was its advertising space and its ability to circulate ads in its newspapers distributed without cost to readers.
We, therefore, conclude that Dothan’s withdrawal and use of its inventory to produce the newspapers it then distributes at no cost to subscribers is a retail sale triggering sales tax, under § 40-23-l(a)(10). Such conclusion is not only consistent with the decisions of this court and our supreme court since the Disco Aluminum case, but it is consistent with the purpose of the withdrawal provisions of the Alabama sales tax statutes. That purpose, which was not changed by the decision in Disco Aluminum, is to provide a mechanism for obtaining sales tax where otherwise there could be none because, though the taxpayer withdraws and uses inventory purchased at wholesale, there is no subsequent sale to another. Ex parte State of Alabama, at 899 (citing State v. Kershaw Manufacturing Co., 372 So.2d 1325 (Ala.Civ.App.1979)). In our opinion, the instant case presents the type of situation for which the withdrawal provisions of the sales tax law were enacted.
Dothan also claims on appeal that the withdrawal provisions of § 40-23-l(a) are unconstitutional as applied to it because they deny Dothan its equal protection rights. Specifically, Dothan claims that the statute unfairly discriminates against a newspaper printing business such as itself which distributes papers for free. It claims that its sales tax under the withdrawal provisions is greater than the tax due from a printing business with paid subscriptions and that such distinction is arbitrary and unreasonable.
The burden is upon Dothan to establish that the sales tax law is unconstitutional. This it has not done. Indeed, it has cited no case which supports its contention that the sales tax statute arbitrarily and unreasonably singles out a particular class— newspaper printing businesses which distribute their papers for free — for unfair tax treatment.
Although it may be true that Dothan’s sales tax under the withdrawal provisions of § 40-23-l(a) may be greater than that of a printing business which sells its papers rather than gives them away, we do not agree with Dothan that this inequality denies Dothan equal protection.
We agree with the Department that there are bound to be inequalities in the effect of a tax on businesses which operate differently. “Unavoidable inequalities which are due only to inequalities in business conditions and activities are not sufficient to render a tax statute invalid.” State v. Hunt Oil Co., 49 Ala.App. 445, 453, 273 So.2d 207, 213, (Ala.Civ.App.1972), cert. denied, 290 Ala. 371, 273 So.2d 214 (1973) (citing 84 C.J.S. Taxation § 23 (1954)).
Dothan argues in brief that it is forced to distribute its newspapers for free solely due to market conditions over which it has no control. It thus appears that any inequality in the sales tax paid by Dothan and its competitors may be due to unavoidable inequalities in business conditions, not an arbitrary classification within the sales tax law.
At any rate, Dothan has not established that the sales tax due under the withdrawal provisions of § 40-23-l(a), which is based upon the fair market value of the inventory purchased at wholesale, does not bear a rational or reasonable relationship to the state’s legitimate purpose of closing the tax loophole which otherwise would exist where taxpayers use materials purchased at wholesale but do not sell those materials to others. Cf. Western and Southern Life Insurance Co. v. State Board of Equalization, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981); Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); National Motor Fleets, Inc. v. Brown, 282 Ala. 572, 213 So.2d 570 (1968).
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J„ concur.